UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In Re* Application of<br><br>THE ATTORNEY GENERAL OF<br>THE BRITISH VIRGIN ISLANDS<br><br>*Applicant*<br><br>for Judicial Assistance to Obtain Evidence<br>for Use in a Foreign Proceeding Pursuant<br>to 28 U.S.C. § 1782 | Misc. Case No. 1:19-mc-00164-RCL |

## APPLICANT'S MOTION FOR LEAVE TO FILE A SUR-REPLY

### I.   INTRODUCTION

1.   This Motion for Leave to File a Sur-reply ("Sur-reply Motion") assumes familiarity with all prior filings in this Case and is not intended to be a rehashing of facts and argument in those filings.  Capitalized terms in this Sur-reply Motion not defined herein have the same definitions as in the Application, Appl. for Judicial Assistance to Obtain Evid. for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782, ECF No. 1, and the Response, Mem. in Opp'n to (1) Lester Hyman's R. 24 Mot. to Intervene and (2) Lester Hyman's Opp'n to the Att'y Gen. of the Virgin Is.'s Appl. for Judicial Assistance to Obtain Evid. for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782, ECF No. 3.  This Sur-reply Motion is solely to seek leave to address certain particularly egregious and inaccurate "facts" invented by and raised for the very first time in the Reply of Mr. Hyman to the Applicant's Opposition to the Motion to Intervene (the "Reply") that have the potential to contaminate the record and confuse this Court.  Reply of Lester Hyman to the Applicant's Opp'n to the Mot. to Intervene, ECF No. 4.

1

II.     MEMORANDUM OF LAW

2.      "The court may grant leave to file a surreply at its discretion." Am. Forest & Paper Ass'n, Inc. v. EPA, No. 93-cv-0694(RMU), 1996 WL 509601, at *3 (D.D.C. Sept. 4, 1996) (granting leave).  Although sur-replies are "generally disfavored," Banner Health v. Sebelius, 905 F. Supp. 2d 174, 187 (D.D.C. 2012), and other districts do not find sur-replies appropriate to correct factual inaccuracies, e.g., Racetrac Petrol., Inc. v J.J.'s Fast Stop, Inc., No. Civ. A. 3:01-CV-1397, 2003 WL 251318, at *21 (N.D. Tex. Feb. 3, 2003); but see United States v. Bruce, No. 1:18-cr-00464-JCH, 2018 WL 3232353 (D.N.M. Jul. 2, 2018) (granting leave to file a sur-reply to address factual and legal inaccuracies in reply), this District has been less equivocal.  "The district court routinely grants such motions when a party is 'unable to contest matters presented to the court for the first time' in the last scheduled pleading." Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)) (denying appellate relief where appellant, inter alia, failed to seek leave to file a sur-reply to apprise the district court of his evidence that refuted a statement in the reply).  "A surreply is most appropriate where the new matter introduced is factual." United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 277 (D.D.C. 2002); see Alexander v. Fed. Bureau of Investigation, 186 F.R.D. 71 (D.D.C. 1998) (granting leave to file a sur-reply "to refute the statements made by [non-party movant]"); but see Lewis, 154 F. Supp. 2d at 61 (denying leave to file sur-reply to correct mischaracterizations in reply).  "In exercising its discretion, the court should consider whether the movant's reply in fact raises arguments or issues for the first time, whether the nonmovant's proposed surreply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted." Banner Health, 905 F. Supp. 2d at 187.

2

### III.     COMPLIANCE WITH LCVR 7(M)

3.     On December 13, 2019, the Applicant's attorney first called Mr. Hyman's attorney to confer. In that call Mr. Hyman's attorney's assistant took a message, advising that Mr. Hyman's attorney would be back after 4:00 PM and would return the call around that time. Having not heard back from Mr. Hyman's attorney, the Applicant's attorney called again at approximately 9:30 AM on December 16, 2019, and again left a message. Mr. Hyman's attorney and the Applicant's attorney ultimately spoke late in the day, and pursuant to Mr. Hyman's attorney's request, the Applicant's attorney followed up by email after the call and sent a draft version of this Sur-reply Motion as well as the accompanying draft Exhibit A and Proposed Order. In the call, Mr. Hyman's attorney had said that he would review the draft Sur-reply Motion and respond either that evening or latest the following morning with regards to whether Mr. Hyman would oppose or support this Sur-reply Motion. Having not heard back, the following day, December 17, 2019, the Applicant's attorney sent an email at 12:56 PM to Mr. Hyman's attorney advising that the Applicant intended to file this Sur-reply Motion at 5:00 PM and requesting any input from Mr. Hyman before that time. Mr. Hyman's attorney has, as at the time of this filing on December 18, 2019, not responded, and the Applicant is unaware as to whether Mr. Hyman opposes or supports this Sur-reply Motion.

### IV.     ARGUMENT

**A. In his Reply, Mr. Hyman Raises Various "Facts" for the First Time.**

4.     Most egregiously, in his discussion of <u>Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.</u> (*In re* <u>Consorcio Ecuatoriano de Telecomunicaciones S.A.</u>), 747 F.3d 1262 (11th Cir. 2014), Mr. Hyman invents out of thin air that the § 1782 application contained "two sworn declarations that litigation was actually forthcoming

3

and not contingent on the outcome of discovery." Reply 9.  This "fact" is not only nowhere to be found in the CONECEL court's opinion but also nowhere to be found in that case's initial § 1782 application, *Ex Parte* Appl. for Judicial Assistance in Obtaining Evid. for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 and Incorporated Mem. of Law, Ex. 1-2, In re Consorcio Ecuatoriano de Telecomunicaciones S.A., No. 10-mc-22320 (S.D. Fla. Jul. 14, 2010), ECF No. 1.  Simply put, this "fact" did not exist until Mr. Hyman invented it in his Reply, and the Applicant had no means to address in his Response a "fact" that did not yet exist at that time.

5.      Mr. Hyman continues this pattern of inventing new "facts" and introducing them in his Reply when he says, "the one consistent statement that the BVIAG has made throughout its briefing in this case: That it would not initiate proceedings against Mr. Hyman until at least 60 days *after* the conclusion of discovery offered by this court," Reply 14, and "a lawsuit would not commence until 60 days '*after* the conclusion of discovery in the United States,'" Reply 7 (quoting Resp. ¶ 23).  The Applicant has consistently said that exactly zero times.  See Resp. ¶ 23 ("the foreign proceedings are imminent, likely to be filed *within* sixty days after the conclusion of discovery in the United States," citing Appl. ¶ 25 (quoting Appl. Ex. MSK ¶ 78, ECF No. 1-1, "I estimate that a claim will be launched *within* sixty days following the conclusion of discovery hereunder" (emphasis added))).

6.      Mr. Hyman further claims that the Applicant's primary request for the BVI's client file in the Response is "a significant departure from its own application."  Reply 2.  However, the Applicant's very first request for relief sought in the Application is Mr. Hyman's "entire client file for the BVIG," Appl. ¶ 45, and that the request for "bank statements, tax returns, and associated records and communications," Id. ¶ 12, was in addition to the request for the BVI's client file.  Id.

4

7. Mr. Hyman also invents the new "fact" that he "responded to a narrow request for documents reflecting written communications regarding a single issue pertaining to the proposed extension of an airport in the BVI." Reply 2-3. In fact, Mr. Hyman responded to the Applicant's current attorneys' request that Mr. Hyman "provide, as a matter of urgency, your file (both paper file and electronic file including all emails) regarding the above [*BV Airways Inc and associated companies*] matter to us to assist in our investigations." Appl. Ex. MSK-1, at 151, ECF No. 1-2 (emphasis added).

8. However, continuing this theme, Mr. Hyman also states for the first time that "[i]f what the BVIAG is seeking are merely written communications regarding the proposed airport extension, the BVIAG has offered no reason to believe Mr. Hyman has any such documents." Reply 3. In fact, the Applicant has produced such a document: an email from Mr. Hyman to the former Premier regarding, <u>inter alia</u>, the airport extension! Appl. Ex. MSK-1, at 26.

9. In his Reply, Mr. Hyman further makes up that the Applicant "has provided no explanation as to why it has not used those mechanisms to do so," Reply 3, when discussing "existing legal mechanisms under BVI law that would allow it to request its client file from Mr. Hyman." <u>Id.</u> However, the Applicant has, in fact, explained that he "could obtain the requested discovery at this stage from the BVI High Court *if Mr. Hyman, the Third-party Respondents, and the evidence sought <u>were in the BVI rather than in the United States</u>*." Resp. ¶ 48 (emphasis added).

10. In his Reply, Mr. Hyman variously claims that "[t]he BVIAG makes a new factual assertion wholly absent from its application: the BVIAG claims it already has sufficient evidence of its purported claims against Mr. Hyman to allow it to file suit against him in the BVI," Reply 2, that the Applicant asserts that "it presently has sufficient evidence to support its purported claims

to file suit in the BVI," Reply 6, "that the BVIAG recognizes that it does not presently have sufficient evidence of its purported claims to file suit in the BVI," Reply 7, that the Applicant does not have "any evidence of wrongdoing," Reply 9, that the Applicant asserts "that it has sufficient evidence to file a lawsuit in the BVI," Reply 10, that the Applicant now claims that "it has sufficient evidence to file its claims against Mr. Hyman in the BVI," Reply 13, and that the Applicant now claims that he "has enough evidence to file a complaint against Mr. Hyman in the BVI," Reply 18-19.  What the Applicant has actually said is that he can meet the particularized *pleading* standards and "[w]hat the Applicant seeks through the Application is not evidence in a general sense but rather cogent objective evidence . . . to meet the *evidentiary* standard in the BVI High Court."  Resp. ¶ 45.

**B. Having an Accurate Record Assists this Court in Adjudicating Mr. Hyman's Rule 24 Motion and Opposition.**

11.    An accurate record of the facts addressed in paragraphs 3-9, supra, assists this Court with determining whether the statutory requirements of § 1782 have been met by the Applicant and whether the discretionary factors set forth in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) weigh in favor of granting the relief sought by the Applicant in the Application.

12.    Correcting the record with respect to paragraphs 3-4, supra, assists the Court in determining whether a foreign proceeding is contemplated and the existence of reliable indications thereof.  Correcting the record with respect to paragraphs 5-7, supra, assists the Court in evaluating the fourth Intel factor.  Correcting the record with respect to paragraphs 8-9, supra, assists the Court in evaluating the first and third Intel factors.

**C. Mr. Hyman Would Not Be Prejudiced by the Court Granting the Applicant Leave to File a Sur-reply; Rather, It Is the Applicant that is Prejudiced by the Delay Caused by Seeking Leave to File a Sur-reply.**

13. Mr. Hyman can hardly argue that he would be prejudiced by the Court exercising its discretion in favor of granting the Applicant leave to file a sur-reply, and this factor weighs in the Applicant's favor. Rather than prejudicing Mr. Hyman, the need to file a sur-reply in connection with Mr. Hyman's Opposition prejudices the Applicant, for it creates additional delay in both being able to conduct discovery should this Court grant the relief requested in the Application and filing the contemplated lawsuit against Mr. Hyman in the BVI High Court. If anything, Mr. Hyman benefits from the Court granting the Applicant leave to file a sur-reply and the resultant delay.

V.  **CONCLUSION**

14. A movant in his reply has wide latitude in addressing a response; however, introducing made-up "facts" for the first time in a reply falls outside this wide latitude, and for this reason, the Applicant respectfully moves this Court for leave to file the proposed Sur-reply attached as Exhibit A to this Sur-reply Motion and serve it on Mr. Hyman.

December 18, 2019                                      Respectfully submitted,

*/s/ Markus A. Stadler*
Markus A. Stadler
D.C. Bar No. 1046805
*Attorney for the Applicant*

MARTIN KENNEY & CO.
P. O. Box 4740
Road Town
Tortola VG1110
British Virgin Islands
(284) 494-2444
mstadler@mksolicitors.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of December, 2019, I will electronically file the foregoing and accompanying exhibits with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
2000 K St., N.W., Fl. 4
Washington, DC  20006
bpollack@robbinsrussell.com

*/s/ Markus A. Stadler*
Markus A. Stadler
D.C. Bar No. 1046805
*Attorney for the Applicant*

MARTIN KENNEY & CO.
P. O. Box 4740
Road Town
Tortola VG1110
British Virgin Islands
(284) 494-2444
mstadler@mksolicitors.com