UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*In Re* Application of )
)
THE ATTORNEY GENERAL OF )
THE BRITISH VIRGIN ISLANDS ) Misc. Case No. 1:19-mc-00164-RCL
)
*Applicant* )
)
for Judicial Assistance to Obtain Evidence )
for Use in a Foreign Proceeding Pursuant )
to 28 U.S.C. § 1782 )

EXHIBIT A

(PROPOSED) SUR-REPLY TO THE REPLY OF LESTER HYMAN TO THE APPLICANT'S OPPOSITION TO THE MOTION TO INTERVENE

I.   INTRODUCTION

1.   This Sur-reply to the Reply of Lester Hyman to the Applicant's Opposition to the Motion to Intervene (the "Sur-reply") assumes familiarity with all prior filings in this Case, and capitalized terms in this Sur-reply not defined herein have the same definitions as provided in the Applicant's other filings in this Case.

2.   On November 26, 2019, Mr. Hyman filed a Reply, Reply of Lester Hyman to the Applicant's Opp'n to the Mot. to Intervene, ECF No. 4, in connection with his Rule 24 Motion, Mot. of Lester Hyman to Intervene, ECF No. 2, and accompanying exhibit filed on November 5, 2019, Ex. A, ECF No. 2-1. In his Reply, Mr. Hyman introduced for the first time a plethora of wildly inaccurate "facts" and arguments such that they constitute new "facts" and arguments invented by Mr. Hyman upon filing his Reply that the Applicant can only first address

1

in this Sur-reply.  This Sur-reply does not address each newly introduced false fact and argument but only focuses on those newly invented "facts" that are particularly egregious, all of which could potentially mislead or confuse this Court.  The Applicant's lack of addressing other newly introduced false facts and argument in this Sur-reply does not equate to agreement with those "facts" and argument; it simply acknowledges the unusual nature of a sur-reply, which should focus on a targeted set of new matters first introduced in a reply.

**II.    IN HIS REPLY, MR. HYMAN HAS WEAVED TOGETHER COMPLETELY FICTIONAL "FACTS" OUT OF WHOLE CLOTH.  THEY HAVE THE POTENTIAL TO MISLEAD AND CONFUSE THIS COURT.**

3.      Perhaps the most egregious of Mr. Hyman's fictitious "facts" introduced in his Reply is his claim that the § 1782 application in Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc. (*In re* Consorcio Ecuatoriano de Telecomunicaciones S.A.), 747 F.3d 1262 (11th Cir. 2014) contained "two sworn declarations that litigation was actually forthcoming and not contingent on the outcome of discovery."  Reply 9.  Nothing in CONECEL mentions anything about the sworn declarations stating that litigation was actually forthcoming and not contingent on the outcome of discovery, and nothing in the declarations themselves states that.  *Ex Parte* Appl. for Judicial Assistance in Obtaining Evid. for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 and Incorporated Mem. of Law, Ex. 1-2, *In re* Consorcio Ecuatoriano de Telecomunicaciones S.A., No. 10-mc-22320 (S.D. Fla. Jul. 14, 2010), ECF No. 1.  What the declaration does say is

> CONECEL could have the right to initiate civil action for collusion against Lucy Egas Ribandeira, Germania Narváez, and possibly other persons, in the event that liability can be established.  Through its application pursuant to the section 1782 statute, CONECEL seeks evidence to complete its investigation and for use in the potential civil action for collusion.

Id. Ex. 1 ¶ 17.  It further states,

2

> The evidence and testimony that CONECEL seeks to obtain with this application, based on 28 U.S.C. § 1782, are necessary to prove the overbilling by JAS Ecuador during the period from 2002 to 2008, the possible involvement of Lucy Egas Ribadeneira and Germania Narváez (and possibly others) in the process, as well as possible collusion against CONECEL.  The evidence and testimony requested in this application will be used in the potential civil action for collusion and, separately, in the contemplated private criminal action by CONECEL against Lucy Egas Ribadeneira, Germania Narváez and possible accomplices.

Id. Ex. 1 ¶ 21.  The Applicant fails to see any evidence that CONECEL stated that litigation was actually forthcoming and not contingent on the outcome of discovery where CONECEL's Legal and Compliance Director referred to a "*potential* civil action," Id. Ex. 1 ¶ 17, and stated that "CONECEL *could* have the right to initiate civil action . . . *in the event that liability can be established*," Id. Ex. 1 ¶ 21 (emphasis added).[1]  The CONECEL court also noted that the contemplated Ecuadorian civil action was pending until the completion of the discovery requested in CONECEL's § 1782 application, contrary to Mr. Hyman's fictional assertion that the contemplated Ecuadorian civil action was not contingent on § 1782 discovery.  CONECEL, 747

---

[1] The second sworn declaration in the § 1782 application was from CONECEL's attorney in ongoing arbitration proceedings, which was irrelevant in CONECEL and the order from the district court as both courts focused exclusively on the *contemplated* court proceedings.  CONECEL had sought § 1782 discovery for use in distinct proceedings against differing parties: (1) contemplated civil (and possibly criminal) actions in an Ecuadorian court and (2) ongoing arbitration proceedings.  The evidence sought on discovery was identical for both proceedings.  Neither the CONECEL court nor the district court reached whether an arbitration proceeding was a foreign tribunal for § 1782 purposes, CONECEL, 747 F.3d at 1269-70 n.4, since both courts found that the *contemplated* actions in an Ecuadorian court qualified as a foreign proceeding, Id. at 1267, 1269-70, and § 1782 does not restrict the applicant from using evidence obtained through § 1782 for other purposes beyond the initial § 1782 application, see, e.g., Bouvier v. Adelson (*In re* Accent Delight Int'l Ltd.), 869 F.3d 121, 135 (2d Cir. 2017) (citing Ward v. United States (*In re* CPS of U.K.), 870 F.2d 686, 693 n.11 (D.C. Cir. 1989)).  The first sworn declaration was by CONECEL's Legal and Compliance Director in support of the application for discovery for use in the *contemplated* court proceedings.  Arguably, the second sworn declaration in support of the arbitration proceedings was not relevant to either the CONECEL or the district courts.  In any event, the second sworn declaration also—logically, since the arbitration proceeding was ongoing rather than contemplated at the time of the § 1782 application—does not contain any statement that could be interpreted as anything remotely akin to "that litigation was actually forthcoming and not contingent on the outcome of discovery," Reply 9.

F.3d at 1271 ("CONECEL claims that it has not yet brought any action against its former employees because it is still waiting for the evidence it seeks pursuant to the instant discovery application."). As with much of his Reply, only through the introduction of make-believe "facts" can Mr. Hyman attempt to distinguish this highly relevant and analogous case from the facts in his predicament.

4. Mr. Hyman continues this pattern of inventing new "facts" and introducing them in his Reply when he says, "the one consistent statement that the BVIAG has made throughout its briefing in this case: That it would not initiate proceedings against Mr. Hyman until at least 60 days *after* the conclusion of discovery offered by this court," Reply 14, and "a lawsuit would not commence until 60 days '*after* the conclusion of discovery in the United States,'" Reply 7 (quoting Resp. ¶ 23). The Applicant has consistently said that exactly zero times. See Resp. ¶ 23 ("the foreign proceedings are imminent, likely to be filed *within* sixty days after the conclusion of discovery in the United States," citing Appl. ¶ 25 (quoting Appl. Ex. MSK ¶ 78, ECF No. 1-1, "I estimate that a claim will be launched *within* sixty days following the conclusion of discovery hereunder" (emphasis added))).

5. Mr. Hyman further claims that the Applicant's primary request for the BVI's client file in the Response, Mem. in Opp'n to (1) Lester Hyman's R. 24 Mot. to Intervene and (2) Lester Hyman's Opp'n to the Att'y Gen. of the Virgin Is.'s Appl. for Judicial Assistance to Obtain Evid. for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, ECF No. 3, was "a significant departure from its own application." Reply 2. However, the Applicant's very first request for relief sought in the Application is Mr. Hyman's "entire client file for the BVIG," Appl. ¶ 45, and that the request for "bank statements, tax returns, and associated records and communications," Id. ¶ 12, was in addition to the request for the BVI's client file. Id. The Applicant has been entirely

4

consistent since filing the initial Application as to the scope of the relief he respectfully seeks from this Court.

6. Mr. Hyman also invents the new fanciful "fact" that he "responded to a narrow request for documents reflecting written communications regarding a single issue pertaining to the proposed extension of an airport in the BVI." Reply 2-3. In fact, Mr. Hyman responded to the Applicant's current attorneys' request that Mr. Hyman "provide, as a matter of urgency, your file (both paper file and electronic file including all emails) regarding the above [*BV Airways Inc and associated companies*] matter to us to assist in our investigations." Appl. Ex. MSK-1, at 151, ECF No. 1-2 (emphasis added). The Applicant's current attorneys' request to Mr. Hyman was for the entire file regarding the failed airline venture and not narrowly limited to any proposed airport extension.

7. However, continuing this theme, Mr. Hyman also states for the first time that "[i]f what the BVIAG is seeking are merely written communications regarding the proposed airport extension, the BVIAG has offered no reason to believe Mr. Hyman has any such documents." Reply 3. In fact, the Applicant has produced such a document: an email from Mr. Hyman to the former Premier regarding, inter alia, the airport extension! Appl. Ex. MSK-1, at 26. The production of such a document by the Applicant after Mr. Hyman misrepresented to his former client's current attorneys not just that he did not have it but rather that it never existed in the first place for the now demonstrably false reason that there were no written documents because of his manifestly bogus assertion that all communications were done telephonically or in-person is more than sufficient reason to "believe" that Mr. Hyman has concealed responsive documents that he is under a duty to hand over upon his former client's current attorneys' demand; in fact, it is affirmative evidence of actual concealment.

8. In his Reply, Mr. Hyman further makes up that the Applicant "has provided no explanation as to why it has not used those mechanisms to do so," Reply 3, when discussing "existing legal mechanisms under BVI law that would allow it to request its client file from Mr. Hyman." Id. However, the Applicant has, in fact, explained that he "could obtain the requested discovery at this stage from the BVI High Court *if Mr. Hyman, the Third-party Respondents, and the evidence sought were in the BVI rather than in the United States*." Resp. ¶ 48 (emphasis added).

9. In his Reply, Mr. Hyman variously claims that "[t]he BVIAG makes a new factual assertion wholly absent from its application: the BVIAG claims it already has sufficient evidence of its purported claims against Mr. Hyman to allow it to file suit against him in the BVI," Reply 2 that the Applicant asserts that "it presently has sufficient evidence to support its purported claims to file suit in the BVI," Reply 6, "that the BVIAG recognizes that it does not presently have sufficient evidence of its purported claims to file suit in the BVI," Reply 7, that the Applicant does not have "any evidence of wrongdoing," Reply 9, that the Applicant asserts "that it has sufficient evidence to file a lawsuit in the BVI," Reply 10, that the Applicant now claims that "it has sufficient evidence to file its claims against Mr. Hyman in the BVI," Reply 13, and that the Applicant now claims that he "has enough evidence to file a complaint against Mr. Hyman in the BVI," Reply 18-19. Leaving aside the internal inconsistencies of Mr. Hyman's conflicting assertions within the Reply, what the Applicant has actually said is that he can meet the particularized *pleading* standards and "[w]hat the Applicant seeks through the Application is not evidence in a general sense but rather cogent objective evidence . . . to meet the *evidentiary* standard in the BVI High Court." Resp. ¶ 45. Mr. Hyman persistently elides the BVI's required (1) pleading and (2) evidentiary standards when alleging facts of fraud and/or dishonesty despite

6

the filing standard being clearly stated in the Application, "heightened pleading requirement based on cogent objective evidence." Appl. ¶ 30.

### III.  CONCLUSION

10.  As previously stated in paragraph 2, *supra*, there are many more newly introduced falsehoods in Mr. Hyman's Reply, and their lack of being addressed in this Sur-reply in no way means that the Applicant agrees with them. The fact that Mr. Hyman resorts to inventing fantastical "facts" and introducing them for the first time in his Reply is telling about just how weak his position is, and the Applicant respectfully asks this Court to consider that and exercise its discretion in favor of granting the requested relief in the Application.

(December 18, 2019)                                     Respectfully submitted,

*/s/ Markus A. Stadler*
Markus A. Stadler
D.C. Bar No. 1046805
*Attorney for the Applicant*

MARTIN KENNEY & CO.
P. O. Box 4740
Road Town
Tortola VG1110
British Virgin Islands
(284) 494-2444
mstadler@mksolicitors.com