**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ATTORNEY GENERAL OF | ) |
| THE BRITISH VIRGIN ISLANDS, | ) |
| | ) |
|      *Applicant*, | ) |
| | ) |
| for Judicial Assistance to Obtain Evidence | ) |
| for Use in a Foreign Proceeding Pursuant | ) |
| to 28 U.S.C. § 1782. | )     Case No. 1:19-mc-164-RCL |
| | ) |
| v. | ) |
| | ) |
| LESTER HYMAN, ESQ., | ) |
| | ) |
|      *Defendant-Intervenor*. | ) |
| _____ | ) |

## MEMORANDUM OPINION

The Attorney General of the British Virgin Islands ("the applicant") has applied for

judicial assistance to obtain evidence for use in a foreign proceeding pursuant to 28 U.S.C. §

1782 ("Section 1782"). ECF No. 1. The evidence sought would be used in a contemplated civil

lawsuit in the British Virgin Islands ("BVI") against Lester Hyman, a member of the District of

Columbia Bar who represented the British Virgin Islands Government ("BVIG") for

approximately thirty years. The Court previously granted Mr. Hyman's motion to intervene and

oppose the application, making him a defendant-intervenor in this case. ECF No. 8. Upon

consideration of all memoranda filed by both the applicant and Mr. Hyman (ECF Nos. 1, 2-1, 3,

4, & 5-1), the Court will **GRANT IN PART AND DENY IN PART** the application for judicial

assistance under Section 1782. Specifically, the Court will **DENY WITHOUT PREJUDICE** all

requests for discovery from persons or entities other than Mr. Hyman. The Court will also

**DENY WITHOUT PREJUDICE** the two overly broad requests for discovery from Mr. Hyman

1

(detailed below and in the accompanying Order). The Court will **GRANT** all other requests for discovery from Mr. Hyman (detailed below and in the accompanying Order).

## BACKGROUND[1]

The applicant seeks assistance from this Court in obtaining evidence for contemplated civil proceedings against Lester Hyman in the BVI. ECF No. 1 ¶ 2. Mr. Hyman is a member of the District of Columbia Bar who represented the BVIG in an attorney-client capacity from 1987 to July 30, 2017, at which point the BVIG terminated Mr. Hyman. *Id.* The applicant is contemplating bringing a civil action in the BVI against Mr. Hyman for fraud in equity, breach of fiduciary care and loyalty, and negligence. *Id.* Legal professional ethics rules and case law in the BVI impose heightened pleading standards when alleging fraud or dishonesty, meaning that the pleading must be particularized and supported by cogent evidence. *Id.* at ¶ 3. Because the allegations the applicant is contemplating are very serious, the Attorney General would like to conduct investigations and discovery to ensure the accuracy of its founding pleading for use before the Eastern Caribbean Supreme Court at the BVI ("BVI High Court"). *Id.*

According to the applicant, while acting within the scope of his legal representation, Mr. Hyman introduced certain business promoters from the United States to the BVIG in late 2013 or early 2014. *Id.* at ¶ 4. These promoters proposed starting an airline that would operate nonstop commercial flights between Miami and the BVI. *Id.* The BVIG ultimately invested $7,200,000 in the airline, but it never went into operation, and the other investors never invested any money before burning up the BVIG's investment. *Id.* at ¶ 5. The BVIG's investigations suggest that Mr.

---

[1] These facts are taken from the Section 1782 application (ECF No. 1) and serve merely as context for the remainder of the Memorandum Opinion. The Court takes no position on whether the applicant could prove these allegations in either a U.S. court or in the BVI High Court.

Hyman was a paid Director of the failed airline and personally profited an undisclosed $10,000 in director's fees, $2,500 for each in-person meeting, and stock options. *Id.* at ¶ 6. Mr. Hyman was also likely a paid Director of at least one of the airline's shareholder companies. *Id.* Additionally, Mr. Hyman apparently received a secret $200,000 finder's fee from the airline and/or its promoters for putting the deal together with the BVIG. *Id.* Mr. Hyman did not disclose any of this information to the BVIG. *Id.*

After the BVIG terminated Mr. Hyman, he attempted to recharacterize his role from that of attorney to that of "honest mediator," but he later admitted to working on both sides of the transaction. *Id.* The BVIG cites numerous emails between Mr. Hyman and the then-Premier of the BVI which show that he failed to disclose important red flags about the airline investment to his client. *Id.* at ¶ 7. Mr. Hyman also attempted to convince the then-Premier to sign a side letter containing clauses adverse to the BVIG's interests. *Id.* at ¶ 9. Mr. Hyman then pushed the BVIG to enter into the airline venture. *Id.*

In June of 2019, the BVIG's current attorneys requested the BVIG's client file from Mr. Hyman. *Id.* at ¶ 10. Despite having had the BVIG as a client for thirty years, Mr. Hyman responded that there was neither a client file nor any form of written communications ever created because all of his meetings were in person or over the phone. *Id.* The BVIG, however, is in possession of many emails and documents between the BVIG and Mr. Hyman regarding the failed airline venture, thus suggesting that Mr. Hyman's response was inaccurate. *Id.* Additionally, when asked by the BVIG's current attorneys about the renumeration that he received as director of the failed airline venture, he responded that he believed he was paid about $500; however, the director that the BVIG was entitled to place on the airline's Board of

Directors has provided an email from the airline setting out director compensation, which included a payment of $10,000, $2,500 per in-person meeting, and stock options. *Id.* at ¶ 11.

Because of the heightened pleading standard that applies to the contemplated lawsuit, the applicant requests the Court's assistance so that it may better support its claim against Mr. Hyman. *Id.* at ¶ 13. The applicant specifically requests the following:

- An Order that the applicant may serve subpoenas *duces tecum* on Lester S. Hyman, Esq., compelling the production of: (1) His entire client file for the BVI, which shall also include any documents, correspondence, or any other material that should be in the client file but that Mr. Hyman may not as of yet have included in the client file; (2) For the period of January 1, 1987 to the present, copies of all documents (whether in electronic or hard copy form) evidencing, describing, or otherwise mentioning any retainers, letters of engagement, letters of instructions, or any other document setting out the nature of the agreement(s) between Mr. Hyman and the BVI for the provision of legal advice or other services to the BVI; (3) For the period from September 1, 2013 to the present, copies of all account statements, payment advice slips, checks, wire transfer confirmations, cash receipt slips, or any other financial document (whether in electronic or hardy copy form) in respect to any Bank Account of Mr. Hyman, including documents or communications of any kind showing information regarding any and all payments or deposits made by electronic funds transfer, banker's draft, check, or cash for the credit of any Bank Account of Mr. Hyman;[2] (4) For the period from August 1, 2013 to the present, copies of all documents and information (whether in electronic or hard copy form) in Mr. Hyman's possession, custody, or control arising from or in connection with Mr. Hyman's provision of legal or other services to the BVI including, but not limited to, documents and information relating to the failed airline venture; (5) For the period from January 1, 1987 to December 31, 2017, copies of all annual reports (or similar) issued by Mr. Hyman to the BVI that set out a summary of the services rendered by Mr. Hyman in exchange for his $100,000 annual retainer; (6) For the period from August 1, 2013 to the present, copies of all communications (whether in electronic or hardy copy form) in Mr. Hyman's possession, custody, or control between Mr. Hyman and any of the Operator Parties;[3] and (7) For the years 2014, 2015, 2016, 2017, and 2018, copies of all U.S. federal income tax returns (including all schedules to such tax returns) filed by Mr. Hyman as well as a statement

---

[2] A "Bank Account of Mr. Hyman" is any account held at any bank, savings and loan association, credit union, securities broker-dealer, or other financial institution that is held in the name of Mr. Hyman or any legal entity, in which Mr. Hyman holds or has held, directly or indirectly, legally or beneficially, a fifty percent or greater interest.

[3] The "Operator Parties" include: (1) BV Airways Inc.; (2) Castleton Holdings LLC; (3) Colchester Aviation LLC; (4) Colchester Aviation Ltd.; (5) Raptor Aviation Ltd.; (6) any shareholders (whether indirect or direct, corporate or individual, legal or beneficial), directors, officers, or any other related party or affiliate of, or acting on behalf of or in conjunction with, any of the enumerated five legal entities; (7) Bruce Bradley; (8) Jamaal Brown; (9) Adam Frieman; (10) Scott Weisman; (11) Jerry Willoughby; and/or (12) any party acting on behalf of or in conjunction with any of the five enumerated individuals.

setting out a detailed breakdown of the sources, nature, and amounts of income realized by Mr. Hyman in those years.

- An Order that the applicant may serve subpoenas *duces tecum* on any information technology person or entity residing or found in the District of Columbia that has provided, at any time since January 1, 2014, any information technology service, to include also anyone or any entity that has maintained and/or provided backup services of any computer, server, information technology device, and/or email correspondence, to Mr. Hyman and/or any legal entity, in which Mr. Hyman holds or has held, directly or indirectly, legally or beneficially, a fifty percent or greater interest, compelling the production of: (1) Any document, spreadsheet, presentation, email correspondence (whether draft or actually sent or received), or any other electronic file that is part of, or should be part of, Mr. Hyman's client file for the BVI; and (2) For the period from January 1, 2014 to the present, copies of all documents, spreadsheets, presentations, and other electronic files that were saved at any time during the period and that relate in any way to the BVI, Mr. Hyman's representation thereof, and/or any of the Operator Parties and all email correspondence during the period to or from, or saved as a draft by, Mr. Hyman and/or any person affiliated in any way with any legal entity, in which Mr. Hyman holds or has held, directly or indirectly, legally or beneficially, a fifty percent or greater interest, that relate in any way to the BVI, Mr. Hyman's representation thereof, and/or any of the Operator Parties.

- An Order that the applicant may serve subpoenas *duces tecum* on any bank, savings and loan association, credit union, securities broker-dealer, or other financial institution residing or found in the District of Columbia that holds or has held a Bank Account of Mr. Hyman at any time since September 1, 2013, compelling the production of: For the period from September l, 2013, to the present, copies of all wire transfer records, debit advices, credit advices, remittance advices, statements of account, correspondence, emails, checks, demand drafts, or any other documents processed or held with respect to any Bank Account of Mr. Hyman.

- An Order that the applicant may serve subpoenas *duces tecum* on any income tax preparer, advisor, or accountant residing or found in the District of Columbia who prepared, advised, or assisted with Mr. Hyman's U.S. federal income tax returns and/or related materials for the years 2014, 2015 2016, 2017, and/or 2018, compelling the production of: Copies of all correspondence, emails, documents, tax returns, schedules to the same, and any other records in electronic or hard copy form that show the quantum, sources, and nature of Mr. Hyman's income from January 1, 2014, to December 31, 2018.

- An Order that the applicant may serve subpoenas *ad testificandum* on Mr. Hyman, compelling him to testify by way of sworn deposition regarding all matters relating to: (1) Any aspect, fact, or other thing arising out of or in any way connected with his representation of the BVI as its attorney; and (2) Any aspect, fact, or other thing connected in any way, also including any aspect, fact, or other thing regarding the BVI's and/or Mr. Hyman's communications and relationships, with any of the Operator Parties.

ECF No. 1-3.

**LEGAL STANDARD**

Section 1782 is designed to "provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 applies to "documentary and other tangible evidence as well as testimony." *Id.* at 248. Section 1782(a) reads:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

Essentially, Section 1782 requires that before granting these applications, courts must find that three factors are met: (1) a person, from whom evidence is sought, reside or be found in the District of this Court; (2) the evidence be for use in a foreign proceeding; and (3) the request be pursuant to a foreign tribunal request or upon application of an interested party. *Intel*, 542 U.S. at 264. As long as these three mandatory factors are met, courts have broad discretion in deciding whether to grant or deny these applications.

Four additional factors exist to guide the exercise of that broad discretion: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, the court, or agency abroad to federal-court judicial assistance; (3)

whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and (4) whether the § 1782(a) request is unduly intrusive or burdensome. *Id.* at 264-65. The Court's discretion is further informed by the twin Congressional aims of "providing efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts." *Id.* at 252.

**ANALYSIS**

As explained below, the Court finds that while all requests for discovery from Mr. Hyman satisfy the mandatory factors, the discretionary factors support granting only some of those requests. The requests for discovery from persons or entities other than Mr. Hyman fail to meet the first of Section 1782's mandatory factors and therefore must be denied.

## I. MANDATORY FACTORS

The Court finds that all three of Section 1782's mandatory factors are satisfied with respect to the requests for discovery from Mr. Hyman. The requests for discovery from any other person or entity fail because the applicant has not properly shown that any other person or entity resides in or is found in the District of Columbia.

> **A. Although Mr. Hyman Undisputedly Resides in the District of Columbia, the Applicant Has Failed to Establish that Any Other Person or Entity from Whom Discovery is Sought Resides in or is Found in the District of Columbia.**

The applicant seeks discovery from Mr. Hyman as well as from unnamed and unknown IT professionals, banks, and income tax preparers, advisers, and/or accountants who assisted with any of Mr. Hyman's 2014-2018 tax returns. Mr. Hyman does not dispute that he resides in

the District of Columbia. ECF No. 2-1 at 5. Therefore, the applicant's request for discovery from Mr. Hyman clearly satisfies the first mandatory factor.

Mr. Hyman asserts that the requests for discovery from persons or entities other than Mr. Hyman are too broad and do not provide any information about "the unnamed and unknown entities from which [the applicant] seeks discovery." *Id.* at 6. He maintains that the correct standard for "residing in" or being "found in" the district requires the applicant to show that the Court has general personal jurisdiction over the entity or person from whom discovery is sought. He then suggests that because very few banks are headquartered in the District of Columbia, the Court will not have general jurisdiction over the banks. Mr. Hyman similarly disputes whether the applicant can establish general jurisdiction over the unnamed IT professionals and tax assistants from whom it seeks information. Essentially, he argues that as a matter of law, specific jurisdiction will not suffice under the first mandatory factor, and the applicant cannot show general jurisdiction over these third parties.

The D.C. Circuit does not appear to have spoken directly on the issue of whether the first mandatory factor requires a finding of general personal jurisdiction rather than specific personal jurisdiction, but other Courts of Appeals as well as the D.C. District Court have found that either general or specific personal jurisdiction will suffice for the first mandatory factor.[4] *See, e.g.*, *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) (finding that the "statutory scope" of the first mandatory factor "extends to the limits of personal jurisdiction consistent with due process" and thus encompasses both general and specific jurisdiction); *In re De Leon*, 2020 U.S. Dist. LEXIS

---

[4] Mr. Hyman claims that in *In re Masters*, 315 F. Supp. 3d 269 (D.D.C. 2018), the Court found that only personal jurisdiction in the form of general jurisdiction will suffice for the first mandatory factor. Mr. Hyman's reading of *In re Masters* is patently incorrect. Although Judge Reggie Walton found that the Court lacked general jurisdiction over the banks in question, he specifically refrained from ruling on the legal issue of whether specific jurisdiction would also suffice, as it was clear that specific jurisdiction did not exist in that case. *In re Masters*, 315 F. Supp. 3d at 274-75.

37270, at *4-5 (D.D.C. Mar. 4, 2020) (quoting *In re del Valle Ruiz* in determining that the first mandatory factor "extends to the limits of personal jurisdiction consistent with due process") (Chutkan, J.). The Court agrees with both the Second Circuit and Judge Chutkan that the first mandatory factor encompasses personal jurisdiction in either form.

Although the Court finds that either general or specific jurisdiction will suffice, the applicant is presently unable to provide the names of any of Mr. Hyman's banks, IT professionals, tax assistants, etc. The Court recognizes that this is because the applicant has not yet been able to depose Mr. Hyman and obtain this information. The applicant has specified that it only seeks discovery from entities that are incorporated or headquartered in the District of Columbia or from entities that worked with Mr. Hyman directly through their District of Columbia branches or offices. ECF No. 3 at 11. Although this theoretically covers only those entities over whom this Court has general or specific jurisdiction, the Court cannot grant a blanket subpoena and trust that the applicant will make the proper determination about personal jurisdiction before serving that subpoena on a person or entity. It is the Court who must decide questions of personal jurisdiction on a case-by-case basis, not the applicant. Because the applicant cannot name any specific person or entity other than Mr. Hyman, the Court must deny the application with respect to any person or entity other than Mr. Hyman.

The Court will, however, deny that portion of the application *without* prejudice. As explained in this Memorandum Opinion, the Court will grant the request to depose Mr. Hyman, meaning that the applicant should be able to learn the names of specific banks, IT professionals, tax assistants, etc. Once it has these names, the applicant may refile the portion of its Section 1782 application seeking information from these other persons or entities. At that point, the applicant will be able to name the exact persons or entities that it would like to subpoena and

explain why the Court has personal jurisdiction (either general or specific) over each one. The Court will not discuss the requests for information from persons or entities other than Mr. Hyman any further in this Memorandum Opinion, as such a discussion will only be proper if the applicant can first establish that those persons or entities "reside in" or are "found in" the District of Columbia.

### B. The Evidence Sought is for Use in a Foreign Proceeding.

The applicant seeks discovery for use in a contemplated civil suit against Mr. Hyman in the BVI, specifically in the BVI High Court. ECF No. 1 ¶ 24. The BVI High Court is clearly a foreign tribunal within the meaning of Section 1782. *See, e.g.*, *In re Ming Yang*, 2019 U.S. Dist. LEXIS 146853, at *1-3 (N.D. Cal. Aug. 28, 2019) (granting an application under Section 1782 for evidence to be used in a proceeding before the BVI High Court). Mr. Hyman does not appear to dispute the BVI High Court's status as a foreign tribunal.

Mr. Hyman does, however, argue that granting the applicant's request would be improper because the foreign proceeding has not yet been initiated. ECF No. 2-1 at 6-7. This argument fundamentally misunderstands the second mandatory factor. The Supreme Court specifically stated in *Intel* that "the 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'"[5] 542 U.S. at 247. The D.C. Circuit has further confirmed that the second mandatory factor merely asks whether there is "sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially." *In re Letter of Request from the Crown Prosecution Serv.*, 870 F.2d 686, 692 (D.C. Cir. 1989). The contemplated proceeding in the BVI High Court meets this test,

---

[5] Mr. Hyman's assertion that the application must be denied because foreign proceedings are not "reasonably imminent" is thus an incorrect statement of the law. ECF No. 2-1 at 6.

and the fact that the Attorney General of the BVI has not yet filed its civil suit against Mr.

Hyman is not fatal to the request. The Declaration of Martin Kenney asserts that the proceedings

against Mr. Hyman will likely "be launched within sixty days following the conclusion of

discovery hereunder." ECF No. 1-1 ¶ 76. This case is thus similar to *In re Application of*

*Furstenberg Fin. SAS v. Litai Assets LLC*, where the Eleventh Circuit found that foreign

proceedings were reasonably contemplated because the applicants stated that they would be

filing proceedings in Luxembourg within 45 days of receiving the Section 1782 discovery. 877

F.3d 1031, 1035 (11th Cir. 2017).

The applicant has explained that it is requesting this evidence before filing its lawsuit to

better ensure that it can meet the BVI's heightened pleading standard for claims involving fraud

or dishonesty. Mr. Hyman argues that if the applicant cannot meet the BVI's heightened pleading

standard without the discovery that it seeks from this Court, then no lawsuit is reasonably

contemplated, and the application must be denied. This argument is flawed for two reasons. First,

the applicant never stated that it *cannot* survive the heightened pleading standard without this

evidence; rather, it has suggested that this evidence would be extremely useful in *ensuring* that it

meets that standard. Second, even if the applicant could not meet the heightened pleading

standard without this evidence, that would not automatically mean that the application must be

denied. *See, e.g.*, *LEG Q LLC V. RSR Corp.*, 2017 U.S. Dist. LEXIS 140280, at *2-5 (N.D. Tex.

Aug. 31, 2017) (granting the Section 1782 request for the express purpose of enabling the

applicant to meet England's heightened pleading standard).

Furthermore, to adopt Mr. Hyman's reasoning would be to ignore the Supreme Court's

determination in *Intel* that the foreign proceeding does not have to be underway for the Court to

grant relief. Mr. Hyman argues that if the applicant *could* meet the pleading standard without this

11

evidence, the Court must deny the motion and let the BVI High Court handle discovery once the applicant files its lawsuit there. At the same time, however, Mr. Hyman argues that if the applicant *could not* meet the pleading standard without this evidence, then no lawsuit is reasonably contemplated and the Court must deny the motion. By this logic, an applicant could never obtain Section 1782 relief when a foreign proceeding is not already underway. Such a holding would not be in accordance with the Supreme Court's express ruling that an application can be granted even when a foreign proceeding has not yet begun. Therefore, regardless of whether the applicant could meet the heightened pleading standard without the requested discovery, the Court is satisfied that the civil suit against Mr. Hyman in the BVI High Court is in reasonable contemplation. The applicant has thus met the second mandatory factor with respect to requests for discovery from Mr. Hyman.

### C. The Applicant is an Interested Party.

The third mandatory factor requires that the request come from either the foreign tribunal or an interested party. The applicant intends to initiate proceedings in the BVI as a claimant and seeks to benefit by obtaining monetary damages should it prevail in the contemplated proceeding. ECF No. 1 ¶ 26. Mr. Hyman concedes that this undoubtedly meets the standard for an interested party. ECF No. 2-1 at 5. Therefore, the applicant has clearly met the third mandatory factor. Because all three mandatory factors are satisfied with respect to the applicant's requests for discovery from Mr. Hyman, the Court may analyze these requests under the four discretionary factors.

## II. DISCRETIONARY FACTORS

The Court finds that the balance of the discretionary factors weighs in favor of granting the application with respect to some but not all of the applicant's requests for discovery from Mr. Hyman.

### A. The First Discretionary Factor Weighs in the Applicant's Favor.

The first discretionary factor asks the Court to consider whether the person from whom discovery is sought is a participant in the foreign proceeding in which the evidence will be used. Once the applicant files its contemplated lawsuit, Mr. Hyman will undoubtedly be a participant. Although normally being a participant in the foreign proceeding would weigh against granting the application because the BVI High Court could order production of this evidence on its own, *Intel*, 524 U.S. at 264, the critical distinction in this case is that the BVI High Court does not yet have jurisdiction over Mr. Hyman. Rather, the applicant seeks discovery to help it meet the heightened pleading standard for claims involving fraud or dishonesty. Therefore, the underlying rationale of the first discretionary factor—compelling production of evidence that the foreign tribunal lacks authority to compel—still applies. *See In re Ambercroft Trading Ltd.*, 2018 U.S. Dist. LEXIS 98175, at *10-11 (N.D. Cal. Oct. 3, 2018). The evidence that the applicant seeks is currently "unobtainable absent § 1782(a) aid." *Intel*, 524 U.S. 264. Because the BVI High Court cannot presently order Mr. Hyman to appear for a deposition or turn over any documents, and in light of the unique procedural posture of this matter, the Court finds that the first discretionary factor weighs in favor of granting the application.[6]

---

[6] Even if this factor did not weigh in the applicant's favor, this is not the only factor to be weighed, meaning that the Court's ultimate decision would likely remain unchanged.

**B. The Second Discretionary Factor Weighs in the Applicant's Favor.**

The second discretionary factor asks the Court to consider the nature of the foreign tribunal and whether the foreign court is receptive to assistance from a U.S. federal court. The BVI High Court has implicitly recognized the admissibility of evidence procured via Section 1782, and Mr. Hyman does not dispute that the second discretionary factor weighs in favor of granting the application. ECF No. 2-1 at 7. Additionally, the Court sees no evidence suggesting that the BVI High Court would not be receptive to evidence procured via Section 1782. The Court thus finds that the second discretionary factor clearly weighs in favor of granting the application.

**C. The Third Discretionary Factor Weighs in the Applicant's Favor.**

The third discretionary factor asks the Court to consider whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country or the United States. As previously explained, the BVI High Court has no objection to parties using evidence obtained via Section 1782. Nevertheless, Mr. Hyman argues that although this evidence would be discoverable in the BVI High Court or in a U.S. court once the applicant filed its lawsuit and reached the discovery stage, it is improper to allow the applicant to obtain this evidence before filing its lawsuit. Mr. Hyman notes that even though the BVI has a heightened pleading standard for these types of allegations, neither BVI nor U.S. courts allow pre-discovery, even where heightened pleading is required.

The case law that Mr. Hyman cites, however, is not on point,[7] and his arguments are not in accordance with the relevant case law. For example, in *In re Ambercroft*, the Northern District

---

[7] Much of the case law that Mr. Hyman cites is presented in a misleading fashion, with quotes being selectively cherry-picked and holdings being taken out of context (or holdings being misstated altogether).

of California specifically held that the question of whether pre-discovery would be allowed in the BVI is irrelevant to the third discretionary factor, and "the fact that pre-discovery may not be allowed under Eastern Caribbean Supreme Court Civil Procedure does not suggest that Petitioner is trying to circumvent proof-gathering restrictions." *In re Ambercroft Trading Ltd.*, 2018 U.S. Dist. LEXIS 171366, at *21 (N.D. Cal. Oct. 3, 2018) (finding that the third discretionary factor weighed in favor of granting the application even though the lawsuit had not yet been filed in the BVI). The question posed by the third discretionary factor is not whether the BVI would permit pre-discovery, but whether BVI law affirmatively prohibits the applicant from obtaining relief under Section 1782. *See Intel*, 542 U.S. at 244 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions; such reasons do not necessarily signal objection to aid from the United States federal courts.").

Furthermore, Section 1782 does not impose an exhaustion requirement, meaning that the applicant does not need to request discovery from the foreign tribunal before filing its Section 1782 request. *See In re Maley Hungarian Airlines*, 964 F.2d 97, 99 (2d Cir. 1992). By the same logic, courts have also rejected "any implicit requirement that any evidence sought in the United States must be discoverable under the laws of the foreign country." *In re Application of Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993). As the Second Circuit has explained, "[p]roof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate*" discovery of the requested information. *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015). There is no indication that the BVI prohibits use of this material, and thus there can be no attempt to circumvent a foreign proof-gathering restriction. Because there is no evidence that the applicant is attempting to

circumvent any proof-gathering restrictions or policies in either the BVI or the U.S., the third discretionary factor weighs in favor of granting the application.[8]

### D. Under the Fourth Discretionary Factor, Two of the Applicant's Requests for Discovery from Mr. Hyman are Unduly Burdensome and Overly Broad.

The fourth discretionary factor asks the Court to consider whether granting the application would be overly burdensome or intrusive for the person from whom information is sought. With respect to any information that is in (or should be in) the client file, Mr. Hyman cannot credibly argue that turning over that information is unduly burdensome or intrusive. The BVIG has a right to this information, and regardless of whether Mr. Hyman failed to maintain a client file or is simply withholding it, Mr. Hyman cannot refuse to turn over information that should be in that file. The applicant should also be able to obtain any information pertaining to Mr. Hyman's relationship with the failed airline, as that is directly relevant to the contemplated lawsuit. Therefore, as set forth in the Conclusion of this Memorandum Opinion and in the accompanying Order, the Court will grant the requests that are specifically tailored to Mr. Hyman's relationship with the airline and the BVI.

Some of the applicant's requests, however, are too broad, which makes them overly burdensome and invasive. The two requests for discovery from Mr. Hyman with which the Court is concerned are:

- For the period from September 1, 2013 to the present, copies of all account statements, payment advice slips, checks, wire transfer confirmations, cash receipt slips, or any other financial document (whether in electronic or hard copy form) in respect of any Bank Account of Mr. Hyman, including documents or communications of any kind showing information regarding any and all

---

[8] Even if this factor did not weigh in the applicant's favor, this is not the only factor to be weighed, meaning that the Court's ultimate decision would likely remain unchanged.

payments or deposits made by electronic funds transfer, banker's draft, check, or cash for the credit of any Bank Account of Mr. Hyman.[9]

- For the years 2014, 2015, 2016, 2017, and 2018, copies of all U.S. federal income tax returns (including all schedules to such tax returns) filed by Mr. Hyman as well as a statement setting out a detailed breakdown of the sources, nature, and amounts of income realized by Mr. Hyman in those years.

These requests would reveal a great deal of personal financial information that is entirely unrelated to the contemplated civil suit against Mr. Hyman. Although the Court understands that the applicant has requested to see all of Mr. Hyman's financial documents out of concern that he will hide any unlawful or unethical transactions, at this time, the Court cannot allow the applicant to have unfettered access to his bank records and tax returns, most of which are unlikely to have any bearing on the contemplated lawsuit.[10]

Of course, granting an applicant's Section 1782 request for personal financial information from another person is not unprecedented. For example, the Southern District of Florida granted an applicant's Section 1782 request for personal financial records from another person—despite that person's objections—because his banking records were relevant to whether he had conspired to hide funds, which was the subject of the foreign proceeding. *In re H.M.B. Ltd.*, 2018 U.S. Dist. LEXIS 111108, at *28-31 (S.D. Fla. July 2, 2018).[11] In that case, however, the Court did not grant the applicant's full request; rather, the Court determined that some of the financial requests were too broad and thus narrowed the scope of its Order to grant discovery only for financial records that were directly relevant to the foreign proceeding. *Id.* In doing so, the

---

[9] A "Bank Account of Mr. Hyman" is any account held at any bank, savings and loan association, credit union, securities broker-dealer, or other financial institution that is held in the name of Mr. Hyman or any legal entity, in which Mr. Hyman holds or has held, directly or indirectly, legally or beneficially, a fifty percent or greater interest.

[10] It is true that this is only one of four discretionary factors to consider, and as a matter of law the Court could still choose to grant these requests in spite of their broad nature; however, the Court does not want to subject Mr. Hyman to such invasive discovery at this time.

[11] Although this explanation comes from Magistrate Judge Jonathan Goodman's Report & Recommendation, Judge Marcia Cooke adopted the Report & Recommendation in its entirety. *See In re H.M.B. Ltd.*, U.S. Dist. LEXIS 145522 (S.D. Fla. Aug. 24, 2018).

Southern District of Florida chose to assume responsibility for narrowing the wording of the request and ensuring that it would not be unduly burdensome or intrusive. The D.C. Circuit, however, has been clear that the District Court is not "obligat[ed] to trim [the] discovery request" after determining that it is "overbroad" or "vague." *Lazaridis v. Int'l Ctr. for Missing & Exploited Children*, 473 Fed. App'x 2, 4 (D.C. Cir. 2012).

In light of *Lazaridis*, the Court could simply deny the two problematic requests outright, as this Court has no interest in assuming responsibility for trimming them itself; however, the Court will instead allow the applicant an opportunity to correct its own mistakes. The Court will deny the two specific requests at issue but allow the applicant to refile a more narrowly tailored request for financial and/or tax information that is *directly relevant* to the airline venture and the contemplated lawsuit. At this time, the Court believes that the applicant is entitled to financial information specifically pertaining to the airline venture and the contemplated civil suit, but not to financial information extending beyond those matters. Therefore, the applicant will need to reword its requests to ask only for information that is relevant to its contemplated lawsuit.

If, at a later date, the applicant wishes to refile the two requests as *currently* worded, it will need to make a strong showing that such invasive discovery is warranted. For example, if the applicant rewords its request for financial records and the Court grants it, but the applicant can prove that Mr. Hyman withholds information covered by that narrowly tailored request, the Court would then consider requiring Mr. Hyman to turn over all of the financial records sought in this initial request. For now, however, the applicant raises only speculative concerns about whether Mr. Hyman would comply with a more narrowly tailored request, making the discovery requests for *all* financial information (as currently worded) premature.

As for all other requests for discovery from Mr. Hyman, the Court finds that those are relevant to the contemplated litigation and thus are not overly broad or burdensome, so the fourth factor weighs in favor of granting those requests.[12]

### E. The Twin Aims of Section 1782 Weigh in the Applicant's Favor.

The twin aims of Section 1782 ask the Court to consider whether granting the application would further the goals of "providing efficient means of assistance to participants in international litigation in our federal courts" and "encourag[ing] foreign countries by example to provide similar means of assistance to our courts." *Intel*, 542 U.S. at 252. Although these twin aims are not their own separate factor, it is useful to note that they will be furthered by the Court's ruling. For the reasons already stated above, the Court finds that granting the applicant's request for discovery from Mr. Hyman would assist the BVIG with its lawsuit against Mr. Hyman. The Court also believes that granting this request will make foreign countries (especially the BVI, which has a provision similar to Section 1782) more likely to reciprocate should our government make a similar request in their courts.[13] Therefore, the Court finds that granting discovery from Mr. Hyman will further the twin aims of Section 1782.

---

[12] Even if this factor did not weigh in favor of granting part of the application, this is not the only factor to be weighed, meaning that the Court's ultimate decision would likely remain unchanged.

[13] Although reciprocity is not "a predicate" to granting an application, *Deere Ltd. v. Sperry Corp.*, 574 F.2d 132, 135 (3d Cir. 1985), it is worth noting that the Court's decision may ultimately foster reciprocity.

## CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART AND DENY IN PART** the application for judicial assistance to obtain evidence for use in a foreign proceeding pursuant to 28 U.S.C. § 1782 (ECF No. 1).

The Court will **DENY WITHOUT PREJUDICE** the requests for discovery from persons or entities other than Mr. Hyman, which the applicant may refile once it learns the identities of the specific persons or entities from which it seeks information. The applicant should ensure that its requests for discovery from these third parties are narrowly tailored and seek only financial/tax information that is directly relevant to the contemplated lawsuit. The current wording of these requests asks for:

- An Order that the applicant may serve subpoenas *duces tecum* on any information technology person or entity residing or found in the District of Columbia that has provided, at any time since January 1, 2014, any information technology service, to include also anyone or any entity that has maintained and/or provided backup services of any computer, server, information technology device, and/or email correspondence, to Mr. Hyman and/or any legal entity, in which Mr. Hyman holds or has held, directly or indirectly, legally or beneficially, a fifty percent or greater interest, compelling the production of: (1) Any document, spreadsheet, presentation, email correspondence (whether draft or actually sent or received), or any other electronic file that is part of, or should be part of, Mr. Hyman's client file for the BVI; and (2) For the period from January 1, 2014 to the present, copies of all documents, spreadsheets, presentations, and other electronic files that were saved at any time during the period and that relate in any way to the BVI, Mr. Hyman's representation thereof, and/or any of the Operator Parties and all email correspondence during the period to or from, or saved as a draft by, Mr. Hyman and/or any person affiliated in any way with any legal entity, in which Mr. Hyman holds or has held, directly or indirectly, legally or beneficially, a fifty percent or greater interest, that relate in any way to the BVI, Mr. Hyman's representation thereof, and/or any of the Operator Parties.[14]
- An Order that the applicant may serve subpoenas *duces tecum* on any bank, savings and loan association, credit union, securities broker-dealer, or other financial institution

---

[14] The "Operator Parties" include: (1) BV Airways Inc.; (2) Castleton Holdings LLC; (3) Colchester Aviation LLC; (4) Colchester Aviation Ltd.; (5) Raptor Aviation Ltd.; (6) any shareholders (whether indirect or direct, corporate or individual, legal or beneficial), directors, officers, or any other related party or affiliate of, or acting on behalf of or in conjunction with, any of the enumerated five legal entities; (7) Bruce Bradley; (8) Jamaal Brown; (9) Adam Frieman; (10) Scott Weisman; (11) Jerry Willoughby; and/or (12) any party acting on behalf of or in conjunction with any of the five enumerated individuals.

residing or found in the District of Columbia that holds or has held a Bank Account of Mr. Hyman at any time since September 1, 2013, compelling the production of: For the period from September 1, 2013, to the present, copies of all wire transfer records, debit advices, credit advices, remittance advices, statements of account, correspondence, emails, checks, demand drafts, or any other documents processed or held with respect to any Bank Account of Mr. Hyman.[15]

- An Order that the applicant may serve subpoenas *duces tecum* on any income tax preparer, advisor, or accountant residing or found in the District of Columbia who prepared, advised, or assisted with Mr. Hyman's U.S. federal income tax returns and/or related materials for the years 2014, 2015 2016, 2017, and/or 2018, compelling the production of: Copies of all correspondence, emails, documents, tax returns, schedules to the same, and any other records in electronic or hard copy form that show the quantum, sources, and nature of Mr. Hyman's income from January 1, 2014, to December 31, 2018.

The Court will **DENY WITHOUT PREJUDICE** the two overly broad requests for discovery from Mr. Hyman. The applicant may immediately file a more narrowly tailored request for financial/tax information that is directly relevant to the airline and the contemplated lawsuit. If, at a later date, the applicant wants to refile these requests as currently worded, for the reasons explained in this Memorandum Opinion, it will need to make a strong showing that such broad discovery is warranted. The current wording of these requests asks for:

- An Order that the applicant may serve *duces tecum* on Lester S. Hyman, Esq., compelling the production of: (1) For the period from September 1, 2013 to the present, copies of all account statements, payment advice slips, checks, wire transfer confirmations, cash receipt slips, or any other financial document (whether in electronic or hardy copy form) in respect to any Bank Account of Mr. Hyman, including documents or communications of any kind showing information regarding any and all payments or deposits made by electronic funds transfer, banker's draft, check, or cash for the credit of any Bank Account of Mr. Hyman; and (2) For the years 2014, 2015, 2016, 2017, and 2018, copies of all U.S. federal income tax returns (including all schedules to such tax returns) filed by Mr. Hyman as well as a statement setting out a detailed breakdown of the sources, nature, and amounts of income realized by Mr. Hyman in those years.

---

[15] A "Bank Account of Mr. Hyman" is any account held at any bank, savings and loan association, credit union, securities broker-dealer, or other financial institution that is held in the name of Mr. Hyman or any legal entity, in which Mr. Hyman holds or has held, directly or indirectly, legally or beneficially, a fifty percent or greater interest.

As set forth below and in the accompanying Order, the Court will **GRANT** the application with respect to all other requests for discovery from Mr. Hyman.

It will be **ORDERED** that the applicant may serve subpoenas *duces tecum* on Lester S. Hyman, Esq., compelling the production of: (1) His entire client file for the BVI, which shall also include any documents, correspondence, or any other material that should be in the client file but that Mr. Hyman may not as of yet have included in the client file; (2) For the period of January 1, 1987 to the present, copies of all documents (whether in electronic or hard copy form) evidencing, describing, or otherwise mentioning any retainers, letters of engagement, letters of instructions, or any other document setting out the nature of the agreement(s) between Mr. Hyman and the BVI for the provision of legal advice or other services to the BVI; (3) For the period from August 1, 2013 to the present, copies of all documents and information (whether in electronic or hard copy form) in Mr. Hyman's possession, custody, or control arising from or in connection with Mr. Hyman's provision of legal or other services to the BVI including, but not limited to, documents and information relating to the failed airline venture; (4) For the period from January 1, 1987 to December 31, 2017, copies of all annual reports (or similar) issued by Mr. Hyman to the BVI that set out a summary of the services rendered by Mr. Hyman in exchange for his $100,000 annual retainer; and (5) For the period from August 1, 2013 to the present, copies of all communications (whether in electronic or hardy copy form) in Mr. Hyman's possession, custody, or control between Mr. Hyman and any of the Operator Parties.[16]

---

[16] The "Operator Parties" include: (1) BV Airways Inc.; (2) Castleton Holdings LLC; (3) Colchester Aviation LLC; (4) Colchester Aviation Ltd.; (5) Raptor Aviation Ltd.; (6) any shareholders (whether indirect or direct, corporate or individual, legal or beneficial), directors, officers, or any other related party or affiliate of, or acting on behalf of or in conjunction with, any of the enumerated five legal entities; (7) Bruce Bradley; (8) Jamaal Brown; (9) Adam Frieman; (10) Scott Weisman; (11) Jerry Willoughby; and/or (12) any party acting on behalf of or in conjunction with any of the five enumerated individuals.

It will be **ORDERED** that the applicant may serve subpoenas *ad testificandum* on Mr. Hyman, compelling him to testify by way of sworn deposition regarding all matters relating to: (1) Any aspect, fact, or other thing arising out of or in any way connected with his representation of the BVI as its attorney; and (2) Any aspect, fact, or other thing connected in any way, also including any aspect, fact, or other thing regarding the BVI's and/or Mr. Hyman's communications and relationships, with any of the Operator Parties.

A separate Order accompanies this Memorandum Opinion.

Date: May 23, 2020

/s/ Royce C. Lamberth
Royce C. Lamberth
United States District Court Judge