UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ATTORNEY GENERAL OF THE
BRITISH VIRGIN ISLANDS,**

*Applicant,*

**v.**                                                          **Case No. 1:19-mc-164-RCL**

**LESTER HYMAN,**

*Defendant-Intervenor.*

## MEMORANDUM OPINION

Last May, the Court authorized the Attorney General of the British Virgin Islands to conduct some discovery under 28 U.S.C. § 1782 for use in a then-contemplated, now-pending foreign proceeding against Lester Hyman. *See* Mem. Op., ECF No. 9. Now the Attorney General seeks further discovery, Second App., ECF No. 15. Mr. Hyman, in turn, opposes further discovery.

Additionally, before the Court are the Attorney General's motion to amend the relief the Court granted last year, ECF No. 14, and Mr. Hyman's motion for a protective order to prevent his deposition, ECF No. 19. The Attorney General has requested that the Court withdraw her motion to amend, ECF No. 38, and suggested that Mr. Hyman's motion for a protective order is moot, ECF No. 39.

Upon consideration of the motions, memoranda filled in support thereof and opposition thereto, and accompanying declarations and exhibits, the Court will **DENY** the second application for judicial assistance, **DENY** as moot the motion to amend relief, **VACATE** its order granting the first application insofar as it permits the Attorney General to depose Mr. Hyman, and **DENY** as moot the motion for a protective order.

1

## I.   BACKGROUND

The Court assumes familiarity with the background to this case. *See* Mem. Op. 2–5.

The Attorney General filed suit against Mr. Hyman in the British Virgin Islands on January 19, 2021.  Notice 1, ECF No. 38.

## II.   LEGAL STANDARDS

Section 1782 provides in its relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .   The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

If an application meets the statutory requirements, the Court must then decide whether or not to permit discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). In exercising that discretion, the Court considers (1) whether discovery is sought from a participant in the foreign proceeding, (2) whether the foreign tribunal is receptive to United States judicial assistance, (3) whether discovery is sought to circumvent foreign limits on proof-gathering, and (4) whether discovery is unduly burdensome. *Id.* at 264–65.

## III.   ANALYSIS

### A.  The Second Application for Judicial Assistance

In her second application for judicial assistance, the Attorney General seeks to serve a subpoena to produce documents on XR Association, a trade association.  Mr. Hyman's daughter Elizabeth Hyman serves as XR Association's CEO.  Exs. to Kenney Decl. 3, ECF No. 15-3.

The Attorney General alleges that XR Association likely possesses documents relevant to its case against Mr. Hyman.  Second App. 2.  The Attorney General bases her allegation on a single

2

email.  Kenney Decl. ¶ 10, ECF No. 15-2; *see* Exs. to Kenney Decl. 2.  The email is from Mr. Hyman to Scott Weisman, who was involved in the transaction underlying the Attorney General's dispute with Mr. Hyman.  Exs. to Kenney Decl. 2.  When he sent the email to Mr. Weisman, Mr. Hyman blind copied his daughter's XR Association email address.  *Id.*  The email reads "Dear Scott: Regarding your e-mail message, I am in the process of retaining and attorney and when that is done I will pass along your name and that of your attorney to my lawyer.  Best regards.  Les[.]" *Id.*

The Attorney General seeks permission to serve a subpoena on XR Association, commanding it to produce all emails to, from, or copying (a) one of five individuals or (b) any local-part at any of five domains.[1]

The Court will first establish that § 1782 allows it to authorize the subpoena the Attorney General seeks before exercising its discretion to deny the request.

## 1. Statutory Authorization

The Court must examine four factors to determine whether § 1782 allows it to authorize the Attorney General to subpoena XR Association.

### (i)  Jurisdiction

The Court must establish that XR Association is a person found in this district.

Before it can reach that inquiry, the Court must identify XR Association—no easy task.

The Attorney General points to a July 20, 2020 filing with the California Secretary of State, which identifies XR Association as a California corporation with a mailing address of P.O. Box 70267, 45 L St. SW, Washington, DC 20004.  *See* Cal. Sec'y State, Statement of Information: XR

---

[1] An email address consists of a local-part, the "@" symbol, and a domain.  For example, in the email address darth_vader@empire.gov, "darth_vader" is the local-part and "empire.gov" is the domain.

Association (July 20, 2020), https://businesssearch.sos.ca.gov/Document/RetrievePDF
?Id=03931052-28641291. But the Court also takes judicial notice of an August 19, 2020 filing in
the same office, which states that XR Association has merged with XRA One, a District of
Columbia corporation. Agreement of Merger (August 19, 2020), https://businesssearch.sos.
ca.gov/Document/RetrievePDF?Id=03931052-28927339. The document lists XRA One as the
surviving corporation and amends the articles of incorporation and bylaws of XRA One to change
its name to XR Association. *Id.* at 1. To avoid ambiguity, in this part of its opinion the Court will
refer to the California corporation as CAXR and the District of Columbia corporation as DCXR.
The California Secretary of State's website also shows that CAXR is no longer an active entity.
*See* Cal. Sec'y State, Business Search, https://businesssearch.sos.ca.gov/ (search for entity number
C3931052) (last visited Feb. 9, 2021).

The District of Columbia corporate records tell a similar tale. They show an inactive record
for CAXR, *see* District of Columbia, CorpOnline, XR Association (File Number N00006251631),
https://corponline.dcra.dc.gov/BizEntity.aspx/ViewEntityData?entityId=4239388 (last visited
Feb. 9, 2021), and an active record for DCXR with a business address of 1299 Pennsylvania Ave.
NW, Suite 300, Washington, DC 20004, *see* District of Columbia, CorpOnline, XR Association
(File Number N00006251631), https://corponline.dcra.dc.gov/BizEntity.aspx/ViewEntityData?
entityId=4249960 (last visited Feb. 9, 2021). The Court takes judicial notice of those public
records as well.

Based on those records, the Court concludes that DCXR is a person present in the district
and that CAXR—a nonextant corporation—is not. *See in re Application of Thai-Lao Lignite
(Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 293–94 (D.D.C. 2011).

The parties do not discuss the distinction between DCXR and CAXR. The Attorney General gives no indication whether she seeks documents from DCXR or CAXR. The Court will assume that when the Attorney General asks to serve a subpoena on XR Association, she means to serve a subpoena on DCXR. Therefore, XR Association in a person found in this district, over which the Court exercises jurisdiction.

*(ii) Foreign Proceeding*

The Court next turns to whether the application seeks evidence for use in a foreign proceeding.

The Attorney General seeks discovery for use in her pending case against Mr. Hyman in the Eastern Caribbean Supreme Court. But that alone is not enough to establish that she seeks the evidence for use in a foreign proceeding. At this stage, she must also make a *de minimis* showing that the evidence she seeks is relevant to the proceeding. *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010). Because the Attorney General has shown that she intends to submit evidence she obtains to the Eastern Caribbean Supreme Court, she has meet her burden. Thus, the application seeks evidence for use in a foreign proceeding.

*(iii) Interested Party*

The next question for the Court is whether the Attorney General is an interested party.

As the plaintiff in her pending case against Mr. Hyman, the Attorney General is an interested party. Accordingly, she may apply for an order under § 1782.

*(iv) Privilege*

Finally, the Court must address whether the Attorney General seeks privileged information.

Mr. Hyman suggests that some of the emails the Attorney General seeks may be protected by the attorney-client or work-product privilege. The Attorney General disputes that claim.

Crucially, though, Mr. Hyman does not suggest that all responsive emails would be privileged. Thus, XR Association, Mr. Hyman, and the Attorney General could develop a process to withhold and log potentially privileged documents and to bring privilege disputes before the Court.

Potential privilege issues would not pose an insuperable obstacle to granting the relief the Attorney General seeks.

* * *

The Attorney General has met the statutory requirements to apply for an order authorizing her to serve a subpoena on XR Association.

## 2. Discretionary Permission

Having determined that it has the authority to grant the Attorney General the relief she seeks, the Court must decide whether to do so.

While the Court looks to four factors in exercising its discretion, *see Intel*, 542 U.S. at 264–65, one factor is the most critical here: undue burden.

"If a court suspects that the § 1782 discovery request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request." *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (cleaned up). A subpoena issued without an adequate basis poses an undue burden on the recipient because he must produce records without justification.

Based on a single blind-copied email—in which Mr. Hyman says only that he plans to retain counsel and to turn Mr. Weisman's contact information over to counsel—the Attorney General speculates that Mr. Hyman may have sent more emails to XR Association email addresses. She further speculates that other people may have emailed XR Association about matters relevant to her case. She further speculates that in those emails, Mr. Hyman (or others) included materials

6

relevant to her case. She further speculates that XR Association still possesses those relevant emails. And she further speculates that Mr. Hyman has not already produced those emails to her pursuant to the subpoena she obtained with her first application.

Take each of those links in turn.

First, the Attorney General speculates that Mr. Hyman sent more emails relevant to this case to XR Association email addresses. But the Court has only a single email that Mr. Hyman blind-copied to his daughter. A single email is not probative of very much. *Cf. Justus v. Junction Ctr. for Indep. Living Inc.*, No. 1:11-cv-39, 2012 WL 844340, at *5 (W.D. Va. Mar. 12, 2012); *Life Alert Emergency Response, Inc. v. Connect America.com, LLC*, No. 13-cv-3455-JAK-SS, 2014 WL 4402066, at *3 (C.D. Cal. Aug. 14, 2014), *report and recommendation adopted*, 2014 WL 4258339 (Aug. 27, 2014). And the email the Attorney General points to does not even relate to any contested issues in the Attorney General's dispute with Mr. Hyman. The support for the Attorney General's notion that Mr. Hyman sent more relevant emails to XR Association email addresses is scant.

Second, the Attorney General speculates that other people sent emails relevant to this case to XR Association email addresses. She provides absolutely no support for that idea.

Third, the Attorney General speculates that Mr. Hyman (or the others) discussed his dealings in the British Virgin Islands in those emails. Again, that support rests on a single-email from Mr. Hyman.

Fourth, the Attorney General speculates that XR Association still possesses those relevant emails. She provides no information about XR Association's email retention policies and the record contains no indication that the Attorney General requested that XR Association hold records in anticipation of litigation before August 2020. Exs. to Kenney Decl. 19–21.

Fifth, the Attorney General implicitly speculates that XR Association possesses new emails.[2] The Attorney General again provides no basis to assume that XR Association possesses any emails. And the fact that Mr. Hyman has already turned over all the relevant emails in his possession (sent and received) makes the idea that he sent any relevant emails to an XR Association email address unlikely.

The Attorney General provides little to no support for any of these leaps of logic. In her reply, she argues only that Mr. Hyman's opposition to her application suggests that responsive documents will be found. Specifically, she argues that in suggesting that some responsive documents may be privileged, Mr. Hyman concedes that responsive documents exist. Perhaps that is so. But a document may be responsive but irrelevant. The Attorney General seeks any emails from several individuals (including Mr. Hyman) and domains sent to XR Association regardless of their content. *Any* email Mr. Hyman sent his daughter at her work email address would be responsive. But the Attorney General provides no reason to think they would be relevant. Moreover, because Ms. Hyman exercises power of attorney for her father and because the subpoena includes Mr. Hyman's attorneys, responsive documents are quite likely to include privileged communications, *see Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 130 F. Supp. 3d 326, 330 (D.D.C. 2015), *aff'd*, 857 F.3d 939 (D.C. Cir. 2017), which is the only point Mr. Hyman sought to make in raising the prospect of a privilege fight. In short, the Attorney General's argument about responsive emails misses the mark, and she provides no basis to think that XR Association possesses relevant emails.

---

[2] If the Attorney General already has emails, requiring XR Association to produce them would be duplicative and the burden imposed on XR Association would be unquestionably undue.

Even if the fact that XR Association is not a party, the receptiveness of British Virgin Island courts to the evidence the Attorney General seeks, and British Virgin Island evidentiary law all support the Attorney General's application, the undue burden the subpoena would pose on XR Association outweighs those factors.

Therefore, the Court exercises its discretion to deny the second application for judicial relief.

### B. Motions Related to the First Application for Judicial Assistance

The Attorney General filed suit against Mr. Hyman in the British Virgin Islands on January 19, 2021. Notice 1. Accordingly, she says that she will conduct under the auspices of the Eastern Caribbean Supreme Court rather than seeking the assistance of this Court. *Id.*

Because the Attorney General no longer seeks to amend the Court's order granting the first application for judicial assistance, *see id.*, the Court will deny the Attorney General's motion to amend relief as moot.

Additionally, because the Attorney General no longer seeks to take Mr. Hyman's deposition under the Court's previous order, the Court need not resolve Mr. Hyman's motion for a protective order. Rather, it will vacate its previous order insofar as that order permitted Mr. Hyman's deposition and deny Mr. Hyman's motion as moot.

## IV.   CONCLUSION

Based on the foregoing, the Court will, by separate order, **DENY** the second application for judicial assistance, **DENY** as moot the motion to amend relief, **VACATE** its order granting the first application insofar as it permits the Attorney General to depose Mr. Hyman, and **DENY** as moot the motion for a protective order.

Date: _____2/23/21_____

Royce C. Lamberth
United States District Judge

9